UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JASON C.,

                          Plaintiff,

v.                                                    6:17-cv-01106
                                                      (TWD)
NANCY A. BERRYHILL
ACTING COMMISSIONER OF SOCIAL SECURITY,


                          Defendant.
_____

APPEARANCES:                                OF COUNSEL:

OLINSKY LAW GROUP                           HOWARD D. OLINSKY, ESQ.
  Counsel for Plaintiff
300 South State Street, Suite 420
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.                 ELIZABETH D. ROTHSTEIN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza - Room 3904
New York, NY 10278

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## DECISION and ORDER

Plaintiff Jason C. brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial

review of a final decision of the Commissioner of Social Security ("Commissioner") denying his

Title II application for Disability Insurance Benefits and Title XVI application for Supplemental

Security Income ("SSI"). *See generally* Dkt. No. 9. This case has proceeded in accordance with

General Order 18 of this Court which sets forth the procedures to be followed when appealing a

denial of Social Security benefits. Both parties have filed briefs. Oral argument was not heard.

Pursuant to 28 U.S.C. § 636(c), the parties have consented to the disposition of this case by a United States Magistrate Judge. (Dkt. No. 5.) For the reasons discussed below, Plaintiff's motion is denied and Defendant's motion is granted.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born in 1971, making him 40 years old at the alleged onset date. (T. 20.[1]) He reported completing high school, and has previous work as a warehouse worker, cab driver, and night stocker. (T. 215.) At the initial application level, Plaintiff alleged disability due to chronic back problems, chronic obstructive pulmonary disease (COPD), anxiety, and depression. (T. 214.)

### B. Procedural History

Plaintiff applied for disability insurance benefits and SSI benefits on October 15, 2014, alleging disability beginning September 1, 2012. (T. 74.) His application was initially denied on March 17, 2015, after which he timely requested a hearing before an Administrative Law Judge ("ALJ"). (T. 60-61, 125-26.) Plaintiff appeared at a video administrative hearing before ALJ Lisa B. Martin on October 25, 2016. (T. 134.) On December 9, 2016, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act ("SSA"). (T. 10-22.) On August 3, 2017, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (T. 1-6.)

---

[1] The Administrative Transcript is found at Dkt. No. 8. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

**C.    The ALJ's Decision**

The ALJ made the following findings of fact and conclusions of law: (1) Plaintiff met the

insured status requirements of the Social Security Act through September 30, 2014, and did not

engage in substantial gainful activity during the period from his September 1, 2012, alleged onset

date through his date last insured; (2) Plaintiff has severe impairments of cervical, thoracic, and

lumbar scoliosis and disorders, chronic obstructive pulmonary disease, depression, anxiety, and

alcohol abuse; (3) he does not have an impairment or combination of impairments that meets or

medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the

"Listings"); (4) he has the residual functional capacity ("RFC")

> to perform the full range of sedentary work as defined in 20 C.F.R.
> §§404.1567(a) and 416.967(a), except he needs an opportunity as
> often as every 30 minutes to briefly change positions during the
> workday for one to two minutes, plus access to normal work breaks
> to make position changes for longer periods of time, and he is
> precluded from all ladders, ropes, or scaffolds climbing and is
> limited to occasional postural motions otherwise, and he is precluded
> from all exposure to dangerous work hazards, which include
> unprotected and exposed, moving machinery, and he is precluded
> from all exposure to extreme heat, humidity, and cold conditions and
> to all concentrated pulmonary irritants, and he is limited to work that
> is detailed but not complex, does not require fast assembly quota
> pace, and does not involve exposure to crowded work settings, and
> he is limited to occasional neck flexion/extension (i.e. full movement
> of neck up, down, left, right) without associated trunk movement;

and (5) he is unable to perform any past relevant work through the date last insured, but there are

jobs existing in significant numbers in the national economy Plaintiff could perform.  (T. 12-21.)

The ALJ concluded that Plaintiff had not been under a disability as defined in the SSA from

September 1, 2012, through the date of the decision.  (T. 21.)

3

**D.     The Parties' Contentions**

Plaintiff argues the ALJ erred in the following ways: (1) she failed to fulfill her obligation to fully and fairly develop the record regarding Plaintiff's mental impairments, resulting in a RFC that is not supported by substantial evidence; and (2) her physical RFC determination is not supported by substantial evidence because she failed to properly evaluate the opinion evidence.  (Dkt. No. 9 at 15-22.[2])

Defendant contends the ALJ's decision is supported by substantial evidence and correct legal standards were applied because: (1) the ALJ correctly assessed Plaintiff's mental RFC and had no duty to further develop the record; and (2) the ALJ properly evaluated the medical opinion evidence.  (Dkt. No. 10 at 12-21.)

## II.     RELEVANT LEGAL STANDARD

### A.     Standard for Benefits[3]

To be considered disabled, a plaintiff seeking SSI benefits must establish that she or he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §1382c(a)(3)(A).  In addition, the plaintiff's physical or mental impairments [must be] of such

---

[2] Page references to the parties' briefs identified by docket number are to the numbers assigned by the Court's CM/ECF electronic docketing system.

[3] While SSI has special economic eligibility requirements, the requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) (SSI) and Title II, 42 U.S.C. § 423(d) (Social Security Disability Insurance) are identical so that "decisions under these sections are cited interchangeably." *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1982) (citation omitted).

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id*. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. § 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). Under the five-step evaluation process, the decision maker determines:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas,* 540 U.S. 20, 24 (2003). The plaintiff-claimant bears the burden of proof regarding the first four steps. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 1996) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)). If the plaintiff-claimant meets his or her burden of proof, the burden of proof shifts to the defendant-Commissioner at the fifth step to prove that the plaintiff-claimant is capable of working. *Id.*

## B.    Standard for Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011 (citations omitted).  A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).

A court's factual review of the Commissioner's final decision is limited to whether there is substantial evidence in the record to support the decision.  42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  An ALJ must set forth the crucial factors justifying her or his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision.  *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *Farraris v. Heckler*, 728 F.2d 582, 587 (2d. Cir. 1984).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).  Where evidence is deemed susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial

evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). A reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Rutherford,* 685 F.2d at 62.

## III.    ANALYSIS

### A.    Residual Functional Capacity

A claimant's RFC is the most he can do despite his limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A regular and continuing basis means eight hours a day, for five days a week, or an equivalent work schedule." *Pardee v. Astrue*, 631 F.Supp. 2d 200, 210 (N.D.N.Y. 2009) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (internal quotation marks omitted)).

It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion. 20 C.F.R. §416.946(c). In assessing a claimant's RFC, the ALJ must consider "all of the relevant medical and other evidence." *Id*. § 416.945(a)(3)-(4). In formulating the claimant's RFC, the ALJ will afford weight to the medical opinion evidence in the record. The relevant factors considered in determining what weight to afford an opinion include the length, nature and extent of the treatment relationship, relevant evidence which supports the opinion, the consistency of the opinion with the record as a whole, and the specialization (if any) of the opinion's source. 20 C.F.R. § 404.1527(c)(1)-(6). The RFC must be supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g). "Ultimately, '[a]ny impairment-

related limitation created by an individual's response to demands of work . . . must be reflected in the RFC assessment.'" *Hendrickson v. Astrue*, No. 11-CV-0927 (ESH), 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting SSR 85-15, 1985 WL 56857, at *8).

The ALJ must "'carefully consider' all the evidence presented by claimants regarding their symptoms, which fall into seven relevant factors including 'daily activities' and the 'location, duration, frequency, and intensity of [their] pain or other symptoms.'" *Del Carmen Fernandez v. Berryhill*, No. 18-CV-326 (JPO), 2019 WL 667743, at *9 (S.D.N.Y. Feb. 19, 2019) (citing 20 C.F.R. § 416.929(c); Social Security Ruling (SSR) 16-3p, *Titles II and XVI: Evaluation of Symptoms in Disability Claims*, 81 FR 14166-01 at 14169-70, 2016 WL 1020935 (Mar. 16, 2016)).

In SSR 16-3p, 81 FR at 14167, the Commissioner eliminated the use of the term "credibility" from the "sub-regulatory policy" because the regulations themselves do not use that term. Instead, symptom evaluation tracks the language of the regulations. The evaluation of symptoms involves a two-step process. First, the ALJ must determine, based upon the objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ." 20 C.F.R. § 416.929(a), (b).

If so, at the second step, the ALJ must consider "'the extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the [objective medical evidence] and other evidence to decide how [the claimant's] symptoms affect [her] ability to work.'" *Barry v. Colvin*, 606 F. App'x 621, 623 (2d Cir. 2015) (citing inter alia 20 C.F.R. § 404.1529(a)); *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (alterations in original).

The ALJ must provide specific reasons for the determination. *Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013). However, the failure to specifically reference a particular relevant factor does not undermine the ALJ's assessment as long as there is substantial evidence supporting the determination. *Id. See also Del Carmen Fernandez,* 2019 WL 667743 at *11 (citing *Rousey v. Comm'r of Soc. Sec.*, 285 F. Supp. 3d 723, 744 (S.D.N.Y. 2018)).

**B.    The ALJ's Duty To Develop the Administrative Record and the Sufficiency of the Evidence Supporting the Mental RFC**

Plaintiff argues that the absence from the record of mental health treatment records from Community Health and Behavioral Services ("CHBS") and Mental Health Connections, where Plaintiff received treatment, resulted in an RFC that was not supported by substantial evidence, and thus led to an erroneous Step Five determination. (Dkt. No. 9 at 16-18.) For reasons explained below, the Court finds Plaintiff's argument unpersuasive and further finds that the mental RFC is supported by substantial evidence.

1.    <u>Record Evidence Regarding Plaintiff's Mental Health
Treatment at CHBS and Mental Health Connection</u>

According to Plaintiff, the record reveals that he reported to Nurse Practitioner ("NP") Jennifer Schrader on April 14, 2014, that he had recently started seeing an unnamed psychologist for depression and anxiety. *Id.* at 16; T. 369. On July 14, 2014, Plaintiff told Ms. Schrader that he had recently switched from CHBS to Mental Health Connections for his anxiety. (Dkt. No. 9 at 16; T. 358.) At his October 28, 2014, appointment with NP Schrader, Plaintiff told her that he was going to a mental health provider for depression. (T. 352.) On May 22, 2015, NP Schrader noted that Plaintiff, whose anxiety and depression were well controlled with medication, was going to Mental Health Connections. (Dkt. No. 9 at 16; T. 588.) On October 16, 2015, Plaintiff told NP Schrader he had been discharged from Mental Health Connections for failing to show up

for multiple appointments because he was homeless and had been stuck in Syracuse. (Dkt. No. 10 at 6; T. 581.) When asked at his October 25, 2016, hearing whether he was undergoing any mental health treatment for depression or anxiety, Plaintiff testified he was seeing his primary care physician who had prescribed Zoloft, and he was trying to get into a clinic. (T. 43.)

At a consultative psychiatric examination on February 13, 2015, Plaintiff informed psychologist Jeanne A. Shapiro, Ph.D., that he started in treatment at Mental Health Connections late the year before and was seeing a counselor, Walt, there every three to four weeks and Dr. Robert Sharpe once a month. (Dkt. No. 9 at 17; T.511.) Plaintiff told Dr. Shapiro he had previously been in treatment with Rick Paulsen and Dr. Hudyncia at CHBS. *Id*. The record does not include records from either CHBS or Mental Health Connections. Plaintiff concedes that the state agency had attempted to obtain records from Mental Health Connections, but no records were provided. (Dkt. No. 9 at 16.)

### 2. ALJ's Duty to Develop the Administrative Record

Although the claimant has the general burden of proving that he or she has a disability within the meaning of the Social Security Act, "'the ALJ generally has an affirmative obligation to develop the administrative record'" due to the non-adversarial nature of a hearing on disability benefits. *See Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2014) (quoting *Melville v. Apfel,* 198 F.3d 45, 52 2d Cir. 1999)). "'It is the ALJ's duty to investigate and develop the facts and develop the arguments both for and against the granting of benefits.'" *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508-09 (2d Cir. 2009)). An "ALJ must make every reasonable effort to help [the claimant] obtain medical reports from the claimant's medical sources so long as permission is granted to request such

reports." *Hart v. Comm'r of Soc. Sec.*, 07-CV-1270 (DNH), 2010 WL 2817479, at \*5 (N.D.N.Y. July 16, 2010) (quoting 20 C.F.R. § 404.1512(d)) (quotation marks omitted).

An ALJ has an affirmative duty to develop the administrative record even where the claimant is represented by counsel; however, the duty is not unlimited. *See Dutcher v. Astrue*, No. 09-CV-1161 (LEK/VEB), 2011 WL 1097860, at \*5 (N.D.N.Y. Mar. 7, 2011) (citing *Pratts v. Chater*, 94 F.3d 34. 37 (2d Cir. 1996)). "Generally, additional evidence or clarification is sought when there is a conflict or ambiguity that must be resolved, when the medical reports lack necessary information, or when the reports are not based on medically acceptable clinical and laboratory diagnostic techniques." *Janes v. Colvin*, 15-CV-1528 (GTS), 2017 WL 972110, at \*4 (N.D.N.Y. Mar. 10, 2017), *aff'd* 710 F. App'x 33 (2d Cir. 2018) (citing 20 C.F.R. § 404.1520b; *Rosa v. Callahan*, 168 F.3d 72, 80 (2d Cir. 1999); *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998)). The ALJ is not required to seek additional evidence when the evidence already in the record is "adequate for [the ALJ] to make a determination as to disability." *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996). The "[m]ere absence of some medical records" is insufficient to show that the ALJ failed in her duty or that reversible error occurred. *Mauzy v. Colvin*, No. 5:12-CV-866 (GLS/ESH), 2014 WL 582246, at \*7 (N.D.N.Y. Feb. 13, 2013) ("The Commissioner's implementing regulations recognize that further development of the record is unnecessary, and administrative law judges may make determinations based upon existing evidence when it is consistent and sufficient to determine whether a claimant is disabled.") (citing 20 C.F.R. §§ 404.1520(b)(a), 416,920b(a)).

An ALJ has taken reasonable steps to complete the medical record when she asks claimant's attorney at a hearing if the medical records before her are complete, and the attorney answers affirmatively. *Orts v. Astrue*, No. 5:11-CV-0512 LEK/ESH, 2013 WL 85071, at \*3

(N.D.N.Y. Jan. 7, 2013); *see Streeter v. Comm'r of Soc.* Sec., No. 5:07–CV–858 (FJS), 2011 WL 1576959, *4 (N.D.N.Y. Apr. 26, 2011) (holding that an ALJ had satisfied her duty to develop the record when "the ALJ specifically asked Plaintiff's counsel, during the hearing, if the medical records were complete, to which Plaintiff's counsel responded affirmatively").

3.    The ALJ Took Reasonable Steps to Ensure the Record was
      Developed in Accordance with Proper Legal Standards

In a pre-hearing March 6, 2016, letter, Plaintiff and his counsel were advised that "if there is more evidence you want the [ALJ] to see, please submit it as soon as possible," and directing the attorney to "please contact us immediately" if assistance was needed in gathering evidence. (T. 127.) Counsel was also informed that "[i]f a physician, expert, or other witness is not cooperating with the production of documents important to your client's case, you may ask the ALJ to issue a subpoena that requires a person to submit documents or testify at your client's hearing." *Id*. There is no claim by Plaintiff that assistance was requested in obtaining medical records or other evidence regarding Plaintiff's mental impairments in response to the letter.

In an April 18, 2016, letter, Plaintiff and his attorney were reminded that "[i]t is the claimant's responsibility to provide medical evidence showing that [he] has an impairment(s) and how severe it is during the time [he] alleges disability," and urging submission of all medical records "not in the file." (T. 257-58.)

The ALJ asked Plaintiff's counsel at the commencement of the October 25, 2016, hearing, "[A]t this point, is there anything else that you're aware of we need to add to the record?" (T. 33.) Plaintiff's counsel stated "The record is complete." *Id*. Plaintiff's counsel immediately followed that statement up by providing one exception to the completeness of the record, citing a note written the week prior by Dr. McNulty referring Plaintiff to a back surgery specialist at Upstate Medical. *Id*. The ALJ gave Plaintiff's counsel ten (10) days to submit this

note.  (T. 34.)  Plaintiff's counsel did not identify any mental health impairment records that he believed were necessary to complete the record or request that the record be left open to submit any such records, although both the ALJ and counsel questioned Plaintiff regarding his claims of depression and anxiety at the hearing.  (T. 42-44, 48-49.)

Given Plaintiff's counsel's affirmative response to the completeness of the record, the failure to raise any concern regarding the treatment notes from two mental health clinics Plaintiff visited in 2014 and 2015 until this appeal, and the substantial evidence supporting the ALJ's mental RFC, as discussed below, the Court cannot find any legal error in the ALJ's failure to request or obtain the records Plaintiff claims were necessary to fully develop the record.[4]

4.    The Record Evidence was Sufficient for the ALJ to Make a Determination as to the Mental RFC, and the Mental RFC is Supported by Substantial Evidence

In determining Plaintiff's RFC, the ALJ considered, based on medical evidence in the file, that Plaintiff's anxiety and depression had been well-controlled with conservative methods including medication and therapy.  (T. 17-18.)  The ALJ specifically referenced NP Schrader's May 22, 2015, note in which she reported that Plaintiff's anxiety and depression were "WELL CONTROLLED WITH MEDICATION DOES GO TO MENTAL HEALTH CONNECTION," and described his anxiety, depression, and sleep disturbances as "CHRONIC, INTREMITTENT (sic) – UNCHANGED." (T. 588.)  The ALJ also referenced NP Schrader's May 18, 2016, note in which she reported that Plaintiff's anxiety was "WELL CONTROLLED ON MEDICATION – HE IS CONTINUING TO TAKE ZOLOFT."  (T. 576.)

---

[4] Plaintiff's argument regarding the ALJ's failure to develop the record with respect to Plaintiff's mental health treatment was not raised by Plaintiff's counsel in his March 6, 2017, letter to the Appeals Council setting forth Plaintiff's arguments and statements of the ALJ's errors.  (T. 226-27.)

Finding the opinion of Dr. Shapiro to be consistent with Plaintiff's history of conservative mental treatment as revealed in the medical records, the ALJ gave it great weight. (T. 19, 511-15.) As noted by the ALJ in her decision, Plaintiff, who told Dr. Shapiro he was depressed at times, complained of lethargy and lack of motivation. (T. 13, 512.) Nonetheless, Plaintiff reported being able to maintain his personal hygiene, perform household chores, manage money, and use public transportation, leading Dr. Shapiro to conclude that his mental impairments were not significant enough to interfere with his ability to function on a daily basis. (T. 13; 512, 514.)

Dr. Shapiro also had found that Plaintiff appeared to have no limitations in understanding and following simple instructions and directions and performing simple or complex tasks; maintaining attention and concentration for tasks; learning new tasks; and attending to a routine and maintaining a schedule. (T. 19, 514.) According to Dr. Shapiro, Plaintiff appeared to have only mild limitations regarding his ability to make decisions and cope with stress, and he appeared to be able to relate to and interact well with others. *Id.* The Court also notes that during the evaluation, Plaintiff told Dr. Shapiro he was unable to work at that time because of his back, with no mention of his mental impairments as an impediment to working. (T. 511.)

The ALJ considered Plaintiff's subjective complaints of concentration deficits and experiencing increased anxiety in crowds in conjunction with her consideration of Dr. Shapiro's findings that there no limitation in his ability to concentrate and that he was able to relate and interact well with others. (T. 19.) As a result, in the RFC the ALJ limited Plaintiff to detailed, but not complex, tasks that did not involve a fast assembly quota pace. *Id*. The ALJ also limited Plaintiff to no exposure to crowded work settings. *Id*.

In sum, the ALJ had no duty to further develop the record with respect to Plaintiff's mental impairments, and the RFC is supported by substantial evidence as it relates to Plaintiff's mental impairments. Moreover, because the Court has determined that the mental RFC was supported by substantial evidence with respect to Plaintiff's mental impairments, he cannot successfully challenge the ALJ's Step Five determination based upon the inadequacy of the RFC. *See Tiffany C. v. Com'r of Soc. Sec.*, No. 5:17-CV-878 (FJS/DJS), 2018 WL 4610676, at *6 (N.D.N.Y. June 20, 2018) ("Where, as here, the RFC determination is supported by substantial evidence . . . an attempt to bootstrap the same argument into Step Five should be rejected" and "relying on [the] RFC as the basis for question to the VE was not error.") (citations omitted).

### C. Sufficiency of the Evidence Supporting the Physical RFC Plaintiff

Plaintiff argues that the ALJ erroneously failed to provide any explanation for rejecting certain manipulative limitations identified by Dr. Michael McNulty, a treating physician at Slocum Dickson Hospital, whose opinion she gave partial weight. (Dkt. No. 9 at 18; T. 18-19.) The two manipulative limitations alleged to have been rejected are Plaintiff's inability to hold his head in a static position more than occasionally, and the limitation in Plaintiff's ability to reach. (Dkt. No. 9 at 19-20.) Plaintiff also argues that because examining consultative physician, Dr. Lorensen, noted that Plaintiff did not have scoliosis or abnormality in the thoracic spine when every imaging study and treatment note contradicted that finding, the doctor's physical examination was inconsistent with the entirety of the record. (Dkt. No. 9 at 21-22.) For reasons explained below, the Court finds that the ALJ followed proper legal standards, and that the physical RFC is supported by substantial evidence.

1.    Treating Physician Rule

The treating physician rule in effect at the time relevant to Plaintiff's claim provides that "an ALJ should defer 'to the views of the physician who has engaged in the primary treatment of the claimant,'" but need only assign those opinions "controlling weight" if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with other substantial evidence in [the] case record." *Cichocki v. Astrue*, 534 F. App'x 71, 74 (2d Cir. 2013) (quoting *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003); 20 C.F.R. § 404.1527(c)(2).  When the ALJ "do[es] not give the treating source's opinion controlling weight," she is required to apply the factors listed in 20 C.F.R. §§ 404.1527(c)(2), including "(1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)); 20 C.F.R. §§ 404.1527(c), 416.927(c).

However, "[w]here an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation." *Blinkovitch v. Comm'r of Soc. Sec.*, 15-CV-1196, 2017 WL 782979 (GTS/WBC), at *4 (N.D.N.Y. Jan. 23, 2017) (citing *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013)).  After considering these factors, "the ALJ must 'comprehensively set forth [her] reasons for the weight assigned to a treating physician's opinion.'"  *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess,* 537 F.3d at 129.

2.     Static Neck Position

In his medical source statement, Dr. McNulty opined that Plaintiff could look down (sustained flexion of neck), turn head right or left, look up, and hold head in static position "occasionally." (T. 644.) The Court finds Plaintiff's claim that the ALJ, without explanation, rejected Dr. McNulty's opinion with respect to Plaintiff's limitation in holding his head in a static position to be without merit. As noted in Defendant's Brief, the ALJ clearly stated that the RFC limited Plaintiff to "occasional neck flexion" because of his history of cervical pain, and that such limitation "sufficiently accommodate[d]" Plaintiff's impairments. (Dkt. No 10 at 19; T. 19.) Moreover, as discussed in Defendant's Brief, the ALJ noted in her decision that a 2016 x-ray of Plaintiff's cervical spine showed no instability (Dkt. No. 20 at 19; T. 16, 648), and Plaintiff reported that his daily activities included watching television and using the computer. (T. 514.) Thus, the Court agrees with Defendant that the ALJ did not err in omitting the limitation from her RFC. (Dkt. No. 10 at 19.) *See McGannon v. Colvin*, No. 5:12-CV-359 (GLS), 2013 WL 1296383, at *2 (N.D.N.Y. Mar. 28, 2013) ("Dr. Schaeffer's opinion that McGannon could only occasionally hold his head in a static position . . . is contradicted by, among other things, McGannon's testimony that he is able to watch television all day.")

3.     Reaching

In his medical source statement, Dr. McNulty opined that Plaintiff could only "occasionally" reach with his arms, including overhead. (T. 644.) Dr. Lorensen found Plaintiff had moderate restrictions in reaching. (T. 509.) The Court finds that the ALJ did not, as Plaintiff argues, either fail to provide an explanation for rejecting the reaching limitation in the

RFC, or substitute her own medical judgment as to the restriction for those of Dr. McNulty and Dr. Lorensen.

The ALJ accepted those of Dr. McNulty's opinions on Plaintiff's limitations which she found to be consistent with Plaintiff's history of back and neck problems, *i.e.*, that he required sedentary work with the opportunity to change positions, and only occasional neck flexion and extension. (T. 15, 19.) However, as the ALJ stated in her decision, she "did not find any objective basis for any manipulative limitations," which included reaching. (T. 19.) The ALJ may reject portions of a medical opinion not supported by objective evidence of record and accept those opinions that are supported by substantial evidence. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002.) Generally, the more consistent a medical opinion is with the record as a whole, the more weight it will be given. *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4), 416.927(c)(4).

The ALJ explained that she rejected Dr. McNulty's manipulation limitations because the limitations were not supported by the record which showed that Plaintiff's physical examinations consistently revealed normal grip and arm strength. (T. 19.) The Court finds that the ALJ's finding is supported by substantial evidence. In January 2013, Plaintiff was found by neurologist Dr. Soults to have full strength in the deltoids, biceps, and triceps. (T. 332.) In October 2013, Dr. Soults found that Plaintiff had full motor strength and full range of motion and was totally asymptomatic. (T. 337.) In February 2015, Dr. Lorensen observed in examining Plaintiff that he had full arm and grip strength. T. 508-09.) In August and October of 2016, Dr. McNulty noted that Plaintiff had full movement of his shoulders and elbows. (T. 604, 647.) As argued by Defendant, the repeated, consistent observations of normal strength in Plaintiff's hands and arms undermine Dr. McNulty's opinions. (Dkt. No. 18.) *See Woodmancy v. Colvin,* 577 F. App'x 72,

75 (2d Cir. 2014) (ALJ properly assigned little weight to a treating physician's opinion that was contradicted by unremarkable findings).

Inasmuch as there is substantial evidence in the medical records supporting the ALJ's findings with regard to Plaintiff's manipulation limitations, including reaching, the Court rejects Plaintiff's argument that because Dr. McNulty's reaching restrictions are consistent with consultative examiner Dr. Lorensen's opinion that Plaintiff had moderate restrictions in reaching, the ALJ erred in finding the manipulation limitations had no objective basis in the record. *See Pellam v. Astrue*, 508 F. App'x 87, 90 (2d Cir. 2013) ("substantial evidence supported the ALJ's decision not to adopt many of the [consultative examiner's] conclusions," including the "relatively vague" opinion that the claimant had "moderate to severe limitations[s].").

### 4. Scoliosis

Plaintiff correctly points out that, contrary to the imaging of Plaintiff's spine and Plaintiff's medical records, Dr. Lorensen found that Plaintiff did not have scoliosis. (Dkt. No. 9 at 21-22; T. 508.) Plaintiff appears to argue that because the finding is contrary to the consistent finding of scoliosis in the medical records, all of Dr. Lorensen's findings are called into question and should be disregarded. (Dkt. No. 21-22.) However, Plaintiff has not pointed to any evidence that relates Plaintiff's scoliosis to the functional capabilities or limitations that he contends render him disabled. *See Kain v. Colvin*, No. 14-CV-650S, 2017 WL 2059806, at *3 (W.D.N.Y. May 15, 2017) ("[D]espite the three years of medical records around Plaintiff's complaints and diagnoses, and numerous imaging reports, nothing from Plaintiff's treating sources related this date to her functional capabilities or limitations").

**D.      Step Five**

Because, as with the ALJ's mental RFC, the Court has determined that the physical RFC is supported by substantial evidence, Plaintiff cannot successfully challenge the ALJ's Step Five determination based upon the inadequacy of the RFC.  *See Tiffany C.,* 2018 WL 4610676, at *6.

**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is **<u>DENIED</u>**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 10) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is **<u>AFFIRMED</u>**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **<u>DISMISSED</u>**.

Dated: March 28, 2019
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge